IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

**MARTIN P. SHEEHAN,**
**Chapter 7 Trustee,**

    Appellant,

v.                                                  **Civil Action No. 5:11-CV-160**
                                                    **(BAILEY)**

                                                    Bankruptcy Case No. 10-02130

**SAMUEL T. POSIN,**
**Debtor,**

    Appellee.

## MEMORANDUM OPINION REVERSING ORDER OF THE BANKRUPTCY COURT

Pending before the Court is the appeal of Chapter 7 Trustee Martin P. Sheehan (the "trustee") challenging the September 26, 2011, decision of the United States Bankruptcy Court for the Northern District of West Virginia. In that decision, the bankruptcy court denied the trustee's motion pursuant to 11 U.S.C. § 542 to require debtor Samuel T. Posin (the "debtor") to deliver possession of a certain motor vehicle and any collision proceeds to the trustee for the purpose of selling the vehicle to pay certain holders of tax liens. For the reasons that follow, this Court **REVERSES** the decision of the bankruptcy court.

## BACKGROUND

**A.**     **Debtor's Petition**

On October 7, 2010, the debtor voluntarily filed for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code in the Northern District of West Virginia [Bk. Doc. 1]. The same day, Martin P. Sheehan was appointed as the trustee [Bk. Doc. 5]. On Schedule A (Real

Property), the debtor listed his home located at 28 Clinton Drive, Tridelphia, West Virginia, which he valued at $113,200 and for which he indicated secured claims exist in the amount of $228,989.77. ([Bk. Doc. 1] at 8). On Schedule B (Personal Property), the debtor listed, *inter alia*, a 2002 Lincoln LS automobile, which he valued at $8,000 and for which no secured claim exists. (Id. at 11, 14-15). On Schedule C (Property Claimed as Exempt), the debtor claimed an $8,000 exemption for the 2002 Lincoln LS, $2,400 pursuant to W.Va. Code § 38-10-4(b) and $5,6000 pursuant to W.Va. Code § 38-10-4(a). (Id. at 13). On Schedule D (Creditors Holding Secured Claims), the debtor outlined the secured claims against his home. (Id. at 14-15). On Schedule E (Creditors Holding Unsecured Priority Claims), the debtor listed taxes and certain other debts owed to governmental units, as set forth in 11 U.S.C. § 507(a)(8), in the amount of $150,084.40. (Id. at 16-20). The debtor thereafter claimed an exemption on his home.

**B.   Debtor's Home**

On November 2, 2010, Manufacturers and Traders Trust Company, as trustee and on behalf of the holders of the Home Equity Loan Pass-Through Certificates, Series 1999-1, c/o Select Portfolio Servicing, Inc. (the "Trust Company"), moved for relief from the automatic stay imposed by 11 U.S.C. § 362 to permit foreclosure on the debtor's home, claiming a need for adequate protection [Bk. Doc. 11]. On November 23, 2010, the trustee objected to the debtor's real property exemption, noting that on Schedule D "there are substantial liens in favor of the State of West Virginia and its agencies" and that "[s]uch liens are liens on all property, real and personal." ([Bk. Doc. 18] at 1). The same day, the trustee objected to the Trust Company's motion for relief from the automatic stay, stating that "[t]here are subordinate tax liens against [the debtor's home] and the Trustee is

objecting to said exemption." ([Bk. Doc. 19] at 1). On March 10, 2011, the bankruptcy court sustained the trustee's objection to any real property exemption, noting that "there is no equity in any real property given the existence of numerous tax liens." ([Bk. Doc. 73] at 1).

On May 26, 2011, the trustee moved the bankruptcy court to approve a contract for the sale of the debtor's home and for permission to pay the lien of the Trust Company [Bk. Doc. 81]. In support of his motion, the trustee attached a proposed sales contract providing for a sale price of $115,000, which would pay the Trust Company's lien in full. The trustee estimated that the closing would occur on or before July 22, 2011. On June 27, 2011, the bankruptcy court approved the trustee's sale of the debtor's home and authorized the trustee to use the proceeds to satisfy the Trust Company's lien in full [Bk. Doc. 86]. When no closing occurred before July 22, 2011, the trustee moved for clarification on August 18, 2011, that he was still permitted to close the sale of the debtor's home [Bk. Doc. 91]. The bankruptcy court clarified that the trustee was so permitted [Bk. Doc. 94]. The sale of the debtor's home was closed shortly thereafter [Bk. Doc. 96].

### C. Debtor's 2002 Lincoln LS

On November 23, 2010, the trustee objected to the debtor's claimed exemption on his 2002 Lincoln LS, noting that on Schedule D "there are substantial liens in favor of the State of West Virginia and its agencies" and that "[s]uch liens are liens on all property, real and personal." ([Bk. Doc. 18] at 1). On March 10, 2011, without ruling on this objection, the bankruptcy court ordered the trustee and the debtor's counsel to "jointly prepare a list of personal property which (a) the Trustee is actually interested in administering; (b) which the Trustee believes is governed by applicable liens; and (c) the Debtor agrees or disagrees

should be administered." (Id.). On August 25, 2011, the trustee reported to the bankruptcy court that he intended to liquidate, *inter alia*, the debtor's 2002 Lincoln LS and asked that the bankruptcy court sustain his objection to the claim of exemption in said property [Bk. Doc. 96].

On August 30, 2011, the trustee moved the bankruptcy court pursuant to 11 U.S.C. § 542 to require the debtor to deliver possession of the 2002 Lincoln LS and any collision proceeds to the trustee for the purpose of selling the vehicle to pay certain holders of tax liens [Bk. Doc. 100]. In so doing, the trustee noted that he had "previously objected to any claim of exemption in the [2002 Lincoln LS] on the grounds that the Debtor had no equity in his property in light of existing tax liens." (Id. at 1). In response, the debtor argued that "[i]f the Trustee is permitted to sell this asset, there will be a deminimus [sic] benefit to creditors, if any, after costs of liquidation and administrative expenses" and that "there will be a significant detriment to [him] because the vehicle is his only means of transportation." ([Bk. Doc. 104] at 2-3).

On September 26, 2011, the bankruptcy court denied the trustee's § 542 motion, reasoning in whole:

> The vehicle was claimed as an exemption on the Debtor's bankruptcy schedules and the Trustee asserts that the full value of the vehicle is subject to liens held by the taxing authorities. The Trustee seeks to administer this asset for the benefit of the taxing authorities. This court will not interfere with the discretion of lienholders when they do not attempt to modify the automatic stay to execute on their liens and the taxing authorities choose not to do so in some cases. . . . [T]he Debtor's election to exempt the asset will stand absent enforcement of tax liens by the taxing authorities.

4

([Bk. Doc. 107] at 1). On October 7, 2011, the trustee noted his appeal [Bk. Doc. 114], which was transmitted to this Court on October 10, 2011 [Bk. Doc. 121].

On November 23, 2011, the trustee filed his Opening Brief [Doc. 4] presenting four sequential arguments in support of his request that this Court reverse the decision of the bankruptcy court. First, the Lincoln LS became property of the estate at the filing of the bankruptcy petition. Second, the lack of equity in the vehicle prevented the debtor from claiming a valid exemption. Third, 11 U.S.C. § 724(b) obligates the trustee to liquidate the vehicle for the benefit of creditors, including tax lienholders. Fourth, the bankruptcy court erred by substituting its judgment for the business judgment of the trustee concerning liquidation of the vehicle.

On December 30, 2011, the debtor filed his Response Brief [Doc. 7] addressing each of the trustee's four arguments. First, the debtor did not "disagree" that the Lincoln LS became property of the estate at filing. Second, the debtor did not "disagree" that tax liens over-encumbered the vehicle at filing. Third, despite § 724(b), the debtor contends that the administration of a vehicle with minimal value will not benefit creditors. Fourth, the bankruptcy court's decision not to interfere with the discretion of the tax lienholders was not an abuse of discretion.

On January 11, 2012, the trustee filed his Reply Brief [Doc. 8] reasserting that § 724(b) obligates him to liquidate property of the bankruptcy estate even where the only creditors which benefit are tax lienholders. In this regard, the trustee estimated that tax lienholders would receive 80% of the sale proceeds after paying the administrative expenses.

On April 23, 2012, this Court heard oral argument from counsel.

## **DISCUSSION**

**I.      Standard of Review**

Pursuant to Rule 8013 of the Federal Rules of Bankruptcy Procedure, "the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings.  Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses."  Fed. R. Bankr. P. 8013.

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  **Anderson v. Bessemer City**, 470 U.S. 564, 573 (1985) (quoting **United States v. United States Gypsum Co.**, 333 U.S. 364, 395 (1948)).  With respect to a bankruptcy court's conclusions of law, the appropriate standard of review is *de novo.  See* **In re Mitrano**, 409 B.R. 812, 815 (E.D. Va. 2009); **In re Meredith**, 527 F.3d 372, 375 (4th Cir. 2008); **Gilbert v. Scratch 'N Smell, Inc.**, 756 F.2d 320 (4th Cir. 1985).  In cases where the issues present mixed questions of law and fact, the reviewing court applies the clearly erroneous standard to the factual portion of the inquiry and *de novo* review to the legal conclusions derived from those facts.  *See* **Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond**, 80 F.3d 895, 905 (4th Cir. 1996).  Finally, decisions committed to the discretion of the bankruptcy court are reviewed for abuse of discretion.  *See* **In re Morris**, 385 B.R. 823, 828 (E.D. Va. 2008).

II. **Analysis**

In light of § 724(b) of the Bankruptcy Code, the trustee argues that the bankruptcy court abused its discretion by denying his motion for turnover of the 2002 Lincoln LS on the basis that a tax lienholder must itself move to modify the automatic stay and recover directly from the debtor. ([Bk. Doc. 107] at 1) ("This court will not interfere with the discretion of lienholders when they do not attempt to modify the automatic stay to execute on their liens and the taxing authorities choose not to do so in some cases . . .."). As explained below, this Court agrees and thus will reverse the decision of the bankruptcy court.

Before addressing the significance of § 724(b), this Court will first outline a number of other legal principles arising from the Bankruptcy Code which provide a proper context to the issue presented on appeal. All legal or equitable interest of the debtor as of the commencement of the case becomes property of the estate. § 541(a)(1). Property may be exempted under state law, though exempted property remains liable for pre-petition debt if the debt is secured by a tax lien. §§ 522(b) and 522(c)(2)(B). The automatic stay applies to tax lienholders. § 362(a)(5). A trustee is empowered to sell estate property. § 363. A debtor must turn over estate property for the trustee to sell "unless such property is of inconsequential value or benefit to the estate." § 542(a).

Applying these provisions to the instant case, this Court concludes that the debtor should have been required to turn over the vehicle to the trustee for the purpose of conducting a sale upon a showing that such a sale would benefit the estate. Here, the bankruptcy court conducted no analysis whatsoever of benefit, instead finding without citation that the tax lienholders were required to move to modify the automatic stay to

enforce their own liens rather than relying upon the trustee.  In light of § 724(b), this Court concludes that the bankruptcy court's decision was an abuse of discretion.

In § 724(b), Congress established a tax lien priority schedule under which administrative expenses have priority over, and should be paid before, tax lienholders:

> Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title . . . and that secures an allowed clam for a tax, or proceeds of such property, shall be distribute –
> (1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;
> *(2) second, to any holder of a claim [for administrative expenses] . . . to the extent of the amount of such allowed tax claim that is secured by such tax lien;*
> *(3) third, to the holder of such tax lien, to any extent that such holder's allowed tax claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;*
> (4) fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien;
> (5) fifth, to the holder of such tax lien, to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection; and
> (6) sixth, to the estate.

(Emphasis added).  Based upon the sequence of paragraphs (2) and (3), this Court must conclude that Congress intended to allow a trustee to liquidate property of the estate for

the benefit of tax lienholders.[1]  Moreover, this Court can find no provision in the Bankruptcy Code precluding the trustee from liquidating property of the estate on behalf of a tax lienholder that files a proof of claim and elects not to seek a modification of the automatic stay.  Accordingly, this Court concludes that the bankruptcy court abused its discretion by denying the trustee's motion for turnover of the Lincoln LS on the basis that tax lienholders must act for themselves and cannot rely upon the trustee to liquidate property on their behalf.

## CONCLUSION

For the foregoing reasons, the Court finds that the bankruptcy court's decision should be, and hereby is, **REVERSED**.  Accordingly, this matter is hereby **REMANDED** for further proceedings consistent with this Memorandum Opinion.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein and to the Clerk of the United States Bankruptcy Court for the Northern District of West Virginia.

**DATED**: April 23, 2012.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

---

[1]Though the bankruptcy court did not analyze the "benefit to the estate" as required in § 542(a), this Court finds that § 724(b) indicates that there would be a benefit to the estate in the event that sale proceeds go to administrative expenses only or to administrative expenses and to the tax lienholders.  In the former scenario, however, this Court cautions the trustee that the bankruptcy court may question whether the sale of the Lincoln LS was "an attempt by the trustee to churn property worthless to the estate just to increase fees . . .."  *In re K.C. Machine & Tool Co.*, 816 F.2d 238, 246 (6th Cir. 1987).